## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **MAXIMUM EFFICIENCY** | ) | |
| **SQUARED, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION No.: 2:14-cv-** |
| | ) | **01214-MHT-PWG** |
| | ) | |
| **SAMSARA WORKS** | ) | |
| **CORPORATION,** | ) | |
| **a Georgia corporation,** | ) | |
| **KRISHNA DONIPARTHI, M.D.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>REPORT AND RECOMMENDATION</u>

This case arises from alleged non-payment for personnel services rendered by Plaintiff Maximum Efficiency Squared, LLC ("Plaintiff") to Defendants Samsara Works Corporation ("SWC") and Krishna Doniparthi, M.D. ("Dr. Doniparthi") (collectively "Defendants"), pursuant to a contractual agreement entered into between the parties.

There are three counts in the Complaint. (Doc. 1-3) The first is for an account stated. The second is for work and labor performed. The third is for breach of contract. These claims do not arise under Federal law.

1

This matter is before the court on Defendants SWC's and Dr. Doniparthi's motion to dismiss the Complaint for lack of personal jurisdiction as to both Defendants and for failure to state a claim against Defendant Dr. Doniparthi, and an alternative motion to transfer venue for *forum non conveniens* to the Northern District of Georgia, Atlanta Division. (Doc. 7).

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss for lack of personal jurisdiction is due to be **GRANTED**. The Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss the claims against Dr. Doniparthi for failure to state a claim and alternative motion to transfer venue to the Northern District of Georgia are **MOOT** in light of the recommended disposition of the motion to dismiss.

## I.   JURISDICTION

Defendants removed this case from the Circuit Court of Montgomery County, Alabama to the United States District Court for the Middle District of Alabama on December 10, 2014. (Doc. 1). On December 15, 2014, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 5). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

2

This case was removed on diversity grounds. (Doc. 1). The Complaint, which was originally filed in the Circuit Court for Montgomery County, Alabama, states that Defendant SWC is a Georgia Corporation. (Doc. 1-3 at p. 1). The "Administrative Services Only Agreement" ("the Agreement")[1], purportedly entered into between Plaintiff and one or both of the Defendants, and attached as an exhibit to the Complaint, states that Plaintiff is an Alabama limited liability corporation. (Doc. 1-3 at p. 2). Both the Complaint and the Agreement fail to specify the citizenship or residency of Defendant Dr. Doniparthi. However, there are sufficient allegations in the notice of removal to determine that Dr. Doniparthi is a resident of Georgia. (Doc. 1). The amount in controversy exceeds $75,000.00 based on the record. (Doc. 1-3 at p. 1). There is subject matter jurisdiction. *See* 28 U.S.C. § 1332.

---

[1] The parties sometimes refer to the Administrative Services Only Agreement as the "ASOA," but given the other acronyms already employed in this case (e.g., SWC, MaxE², MaxE2)—which at times made for confusion—it shall be referred to herein as "the Agreement."

## II.   BACKGROUND AND FACTS[2]

Plaintiff alleges that it entered into the Agreement with Defendants on March 2, 2012, and pursuant to the Agreement, it is owed amounts past due.  (Doc. 1-3 at p. 1).The Agreement, which was attached to the Complaint, states that Plaintiff is "an Alabama limited liability corporation." (Doc. 1-3 at p. 1).  Plaintiff states that "all or most" of the services to be performed by Plaintiff were to be performed in Alabama. (Doc. 19 at pp. 6; 18; 20).  Plaintiff also states that all banking activity related to the account with Defendants was performed in Alabama. (Doc. 19 at p. 6).  Plaintiff further states that it prepared 25 payrolls during the period forming the basis of this dispute, and that Defendants contacted Plaintiff about each payroll prepared in performing the contractual duties. (Doc. 19 at p. 17).

Defendants provide evidence that SWC is a Georgia Corporation that owns and operates a medical practice known as "SomaNu Advanced Medical Center," located

---

[2]These are the facts for purposes of ruling on the pending motion to dismiss, which raises the issue of personal jurisdiction.  They are gleaned from the allegations in the Complaint and the attachments thereto (Doc. 1-3), the notice of removal (Doc. 1), and the briefs and affidavits submitted by each party (Doc. 8; Doc. 8-2; Doc. 19; Doc. 19 at p. 20). There is information in this section that is gleaned from the "facts" section in Plaintiff's brief in opposition to Defendants' motion to dismiss, but was not contained in the Complaint and further does not constitute evidence for the purpose of the personal jurisdiction analysis. Assertions not supported by evidence were not considered as part of the personal jurisdiction analysis, as the Plaintiff is required to present evidence once Defendant has done so. *See infra*. The court has discussed these assertions for background purposes only, but as noted herein, even if they were part of the evidentiary record, they would not support a finding of personal jurisdiction. *See infra*.

in Milton, Georgia. (Doc. 8 at p. 3; 8-2 at ¶ 7). Since incorporation, SWC's only business has been the operation of the medical practice in Milton, Georgia, which is where all its employees work and where all its documents are located. (*Id.*; Doc. 8 at pp. 3, 7-8; Doc. 8-2 at ¶¶7, 9). SWC conducts no business in Alabama, does not own property in Alabama, and has never paid taxes in Alabama. (Doc. 8 at p. 3; 8-2 at ¶¶ 8, 9, 11, and 12).

Defendants provide evidence that Dr. Doniparthi is the co-owner and President of SWC and is a resident of the State of Georgia. (Doc. 8 at p. 2; 8-2 at ¶¶ 3, 4). At the time Dr. Doniparthi signed the Agreement, he was physically present in the State of Georgia. (Doc. 8 at p. 4; 8-2 at ¶ 17). Plaintiff does not state whether its representative signed the Agreement in Alabama or Georgia. (Doc. 19).

The Agreement contemplates the following services to be performed by Plaintiff for SWC's Georgia business: human resource administration, payroll, benefits administration, and workers compensation consulting. (Doc. 1-3 at p. 1). Defendants provide evidence that the enumerated services related to personnel employed by SWC to work at its offices in Georgia. (Doc. 8 at p. 4; 8-2 at ¶ 16).

The Agreement further provides for dispute resolution and specifies that the venue for mediation/arbitration shall be in the State of Georgia.[3] (Doc. 1-3 at p. 3).

---

[3] No party seeks to compel arbitration.

The Agreement contains no choice of law provision. (Doc. 1-3). Neither party offers evidence suggesting or tending to suggest that Alabama law, or any particular state's laws, applies to any dispute arising under or attendant to the Agreement.[4]

## III.   MOTION TO DISMISS STANDARD OF REVIEW

### A.      Rule 12(b)(2) motion to dismiss standard

Exercising its discretion, the court declines to conduct an evidentiary hearing on the Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, and the court observes that no party has requested a hearing. *See* Fed.R.Civ.P. 12(b)(2); *see Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir.1996). The 12(b)(2) standard applicable to motions to dismiss for lack of personal jurisdiction was articulated in *Ashton v. Florala Mem. Hosp.*, 2006 WL 2864413, *2 (M.D. Ala. Oct. 5, 2006).

The *Ashton* court explained as follows:

> The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. *See S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000). When the issue of personal jurisdiction is decided on the briefs and accompanying evidence, but without a discretionary evidentiary hearing, a plaintiff satisfies his or her burden by demonstrating a "*prima facie* case of

---

[4] Plaintiff attempts in his opposition to Defendants' motion to dismiss to clarify that his claims arise under Alabama law (Doc. 19 at p. 6); however, there is nothing in the Complaint to suggest that the law of Alabama is invoked by Plaintiff's claims, and this court will not guess or assume that Alabama law applies based on Plaintiff's filing the case in the Circuit Court of Montgomery County, Alabama alone.

jurisdiction." *Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624, 626 (11th Cir.1994); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990). A plaintiff establishes a *prima facie* case by submitting evidence sufficient to defeat a motion for judgment notwithstanding the verdict. *See DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). Consonant with that standard of review, the court construes the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony. *See Bracewell v. Nicholson Air Serv., Inc.*, 748 F.2d 1499, 1504 (11th Cir.1984). The Eleventh Circuit has explained on more than one occasion that, "[i]f a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.' " *Whitney Information Network, Inc. v. Xcentric Venture, LLC*, Slip No. 06-11888, 2006 WL 2243041, *3 (11th Cir. Aug.1, 2006) (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If the evidence conflicts, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional questions are seemingly intertwined with the merits of the case. *See DeLong*, 840 F.2d at 845.

*Ashton*, supra, at *2.

## IV.   DISCUSSION[5]

### A.   Personal Jurisdiction over the Defendants

The general legal standard for the exercise of personal jurisdiction was well-

---

[5] This Report and Recommendation assumes, but does not decide, that Plaintiff makes *prima facie* showing of personal jurisdiction. This assumption is consistent with the parties' briefing on the instant motion in that their arguments are focused on the evidentiary burden that each carries once a *prima facie* showing has been made. This court questions whether Plaintiff has made a *prima facie* showing, but nonetheless concludes that even if it had, the evidence on the record weighs in favor of Defendants.

articulated in *Engineered Arresting Systems Corp. v. Atech, Inc.*, 2015 WL 1538801,

*3-4 (N.D. Ala. April 7, 2015). The court explained:

> In determining whether to exercise personal jurisdiction over a foreign defendant, a federal court must consider (1) whether the exercise of jurisdiction is permitted by the state long-arm statute, and (2) whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Here, the two inquiries merge because "Alabama's long-arm statute permits service of process to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurison*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)).

> In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (internal quotations omitted). *International Shoe* gave rise to two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler*, 134 S.Ct. at 754. General jurisdiction "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 27 (11th Cir. 2009). Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions with the forum." *Id.*

> In determining whether a forum has specific jurisdiction over a nonresident defendant, a court must focus on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (internal quotation omitted). In other words, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* The Eleventh Circuit has applied a

three-prong test for determining whether sufficient minimum contacts exist for the exercise of specific jurisdiction: (1) "the defendant must have contacts related to or giving rise to the plaintiff's cause of action"; (2) "the defendant must, through those contacts, have purposefully availed itself of forum benefits"; and (3) "the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). Once a showing of minimum contacts is made, a defendant must make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir.2010). "A nonresident's purposeful affiliation with a state for purposes of pecuniary gain has long been deemed a sufficient contact to render the nonresident subject to suit in the courts of that state in litigation related to that business transaction, even if the nonresident has no physical presence in the state whatsoever." *Pepsi–Cola Bottling Co. of Ft. Lauderdale–Palm Beach, Inc. v. Buffalo Rock Co., Inc.*, 593 F.Supp. 1559, 1565 (N.D.Ala.1984) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)).

*Atech*, *supra*, at *3-4.

Moreover, the purposeful availment prong of the minimum contacts analysis cannot be predicated solely on the existence of a contract with a person or entity in the forum state or solely on the unilateral activities of the plaintiff in the forum state. The Supreme Court addressed this issue in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985), a case which involved a disagreement between a Michigan-based Burger King franchisee and the Florida-based Burger King headquarters. The Court explained:

"[T]he foreseeability that is critical to due process analysis ... is

that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*, at 297, 100 S.Ct., at 567. In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958):

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U.S., at 774, 104 S.Ct., at 1478; *World-Wide Volkswagen Corp. v. Woodson*, *supra*, 444 U.S., at 299, 100 S.Ct., at 568, or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, *supra*, 466 U.S., at 417, 104 S.Ct., at 1873.17 Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. *McGee v. International Life Insurance Co.*, *supra*, 355 U.S., at 223, 78 S.Ct., at 201; *see also Kulko v. California Superior Court, supra*, 436 U.S., at 94, n. 7, 98 S.Ct., at 1698, n. 7 .18 Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc.*, *supra*, 465 U.S., at 781, 104 S.Ct., at 1481, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia*, 339 U.S., at 648, 70 S.Ct., at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to

require him to submit to the burdens of litigation in that forum as well.

*Burger King* at 474-476.

The Supreme Court further explained:

> If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, *International Shoe Co. v. Washington*, *supra*, 326 U.S., at 319, 66 S.Ct., at 159, or on "conceptualistic ... theories of the place of contracting or of performance," *Hoopeston Canning Co. v. Cullen*, 318 U.S., at 316, 63 S.Ct., at 604. Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.*, at 316–317, 63 S.Ct., at 604–605. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King* at 478-479.

The Supreme Court ultimately found that though the franchisee had no physical ties to Florida, the franchisee had planned a "substantial and continuing relationship" with Burger King's Florida headquarters by entering into a contract which had a substantial connection with that state and resulted in a "carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* The Court also found relevant that the contract provided that the

11

Burger King operations would be conducted and supervised from the Miami headquarters, and that all agreements were to be made and enforced in Miami. *Id*. Finally, the Court found that the franchise agreement's Florida choice-of-law provision reinforced the franchisee's "deliberate affiliation" with Florida. *Id*.

The Eleventh Circuit has agreed that "neither merely contracting with a forum resident nor the forum resident's unilateral acts can establish sufficient minimum contacts." *See Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010).[6] District courts of Alabama have also held that entering into a contractual relationship is not enough to establish personal jurisdiction.

In a case similar to that at bar, Chief Judge W. Keith Watkins granted a motion to dismiss for lack of personal jurisdiction. In *Norment Sec. Group, Inc. v. Granger Northern, Inc*., 2009 WL 458540 (M.D. Ala. Feb. 23, 2009), a lawsuit arose from subcontracts pertaining to public work construction projects located in two separate states. The contractor's principal place of business was in Alabama, but none of the subcontractors were citizens of Alabama. The contractor argued that the following facts evidenced sufficient minimum contacts such that one of the subcontractors could reasonably anticipate being haled into an Alabama court: (1) the subcontract

---

[6] In that case, the Eleventh Circuit ultimately determined that due "quality and nature" of the relationship between the parties, there existed more than a mere contract, such that personal jurisdiction existed.

was executed in Alabama, (2) there were numerous communications during the performance during the subcontract, (3) payments owed were to be paid into a single account controlled by the contractor at the corporate headquarters in Alabama, (4) subcontractor transmitted five documents to the headquarters in Alabama, (5) there were several conversations between the subcontractor's and contractor's respective personnel regarding the project, (6) the contractor completed more than 1/3 of the work related to the subject project at its headquarters in Alabama, and (7) three invoices sent by contractor requested payment be sent to an Alabama address. *Norment* at *6.

Relying on *Burger King*, the *Norment* court rejected these arguments. It first observed that the subcontractor "ha[d] no physical connection with Alabama, [did] not conduct business in Alabama, [did not] have an office, agents, employees, or property in Alabama" and further noted that there was no evidence that the contract contemplated a long-term relationship between the parties.  *Id.* at ¶ 9. It also found that there was no evidence of any foreseeable contract-related future consequence in Alabama, as there was no choice of law provision requiring the parties to apply Alabama law, and there was no provision requiring mediation to be held in Alabama. *Id*. In fact, the subcontract provided that mediation should be held in Massachusetts, where the subject project was located. *Id*. It further found important that the

13

contractor had not provided any facts about what acts preceded the signing of the contract or who initiated those "acts[,] which the *Burger King* court deemed highly relevant to the specific personal jurisdiction analysis." *Id.* at *10.

The court also found that the contractor's reliance on an argument that it had completed the work required of it in the forum state was misplaced, as such was evidence of a unilateral act, which could not provide the basis for personal jurisdiction over the subcontractor. *Id.* at *10.

With regard to the "communications" between the contractor and subcontractor relating to the subject project, the court found that in the absence of evidence regarding who had initiated the communications and the context of those communications, it could not be determined if those communications tipped the scale in favor of finding personal jurisdiction. *Id.* at *11. Finally, it found the fact that payments were to be sent to Alabama only "secondary" or ancillary" factors in the analysis. *Id*.

Ultimately, the court determined that it was not persuaded that the contractor's evidence—which was comprised of unilateral acts, long distance communications between the parties (without evidence of who initiated the communications or the context), transmission of five documents by the subcontractor to the contractor in Alabama, and notice to the subcontractor that payments would be received in

14

Alabama—was insufficient to show purposeful availment on the part of the subcontractor, and that the contacts created "only an attenuated affiliation with the forum." *Id.* at *11. (internal citations omitted).

The facts alleged by the contractor in the *Norment* case are strikingly similar to those presented in the case at bar. In the instant case, SWC offers evidence that it does not conduct business in Alabama (and never has) and has no office, property, or employees in Alabama. Indeed, there is evidence that SWC's only office is located in Milton, Georgia. Additionally, as in *Norment*, no evidence has been presented to suggest a "longstanding" or "long-term relationship" between Plaintiff and SWC.[7] Also like the *Norment* case, there is no choice of law provision in the Agreement requiring Alabama law to apply to the subject dispute, or any dispute for that matter. Finally, similar to the subcontract in *Norment*, the Agreement in this case specifically requires that any mediation or arbitration take place in Georgia, not Alabama.

Additionally, unlike the franchisee in *Burger King* or the defendant in *Atech*, *supra*, there is no evidence suggesting or tending to suggest that SWC profits or intends to profit from its contract with Alabama-based Plaintiff.[8] The Agreement is

---

[7] There is no evidence on the record regarding a prior relationship between the parties or contemplation of a future relationship between the parties.

[8] Plaintiff states in its affidavit that Dr. Doniparthi received money in payroll advances. This argument is not persuasive, and Plaintiff offers no law to support a conclusion that the receipt of advances from ones own payroll constitutes pecuniary gain such that personal

merely a contract for services, for which SWC pays. There is no "[p]ecuniary gain ... sufficient ... to render [SWC] subject to sui[t]." *Atech*, *supra*, at *3-4.

Notwithstanding the above, Plaintiff argues that personal jurisdiction exists as to SWC principally because it entered into the contract with Plaintiff. Indeed, Plaintiff states in his response brief, "Regardless, the signed contract directly connects this defendant to the pleadings." (Doc. 19 at p. 17). The only other factors that Plaintiff offers in support of its position that there is personal jurisdiction over SWC is that "all banking transactions were initiated in Alabama," "Defendant made payments to Plaintiff in Alabama," "[a]ll or most of the services required to be performed by Plaintiff required work and labor to be performed in Alabama," and that "Defendants or their agents necessarily contacted Plaintiff at a minimum, 25 times to supply payroll information." (Doc. 19 at pp. 6, 16, 17).

As noted above, the mere existence of a contract with an entity in Alabama is insufficient to create personal jurisdiction over SWC. Moreover, like the contractor in *Norment,* Plaintiff has not offered evidence regarding what acts preceded the signing of the Agreement or who initiated the acts which resulted in the signing of the Agreement. Thus, all that is left is the existence of a contract, which is clearly insufficient to establish personal jurisdiction.

---

jurisdiction exists over the recipient.

Of the remaining four additional factors, two (Plaintiff performing contractual duties in Alabama and banking activities being performed in Alabama) relate to unilateral actions taken by Plaintiff and/or a third party. Unilateral actions taken by Plaintiff or a third party cannot form the basis for personal jurisdiction over SWC. *See Diamond Crystal*, *supra*, at 1268.

The remaining two factors do not tip the scale in favor of determining there exists personal jurisdiction over SWC.  Plaintiff asserts that, because SWC or its agents telephoned it with payroll information 25 times, SWC is subject to personal jurisdiction in Alabama. As an initial matter, Plaintiff offers no evidence to support this assertion. As noted, *supra*, when a defendant challenges personal jurisdiction and submits affidavits controverting plaintiff's allegations, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *See Ashton*, *supra*, at *1. Plaintiff has submitted one piece of evidence—the affidavit of its vice president of operations. (Doc. 19 at p. 20). The affidavit never states that Plaintiff received 25 telephone calls from SWC regarding payroll; in fact, it never mentions telephone calls. Therefore, the court is left with mere assertions by Plaintiff's counsel in its brief opposing Defendants' motion to dismiss.[9] Plaintiff offers no evidence to support the

---

[9]  "Statements by counsel in briefs are not evidence."  *Skyline Corp. V. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).  *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11 th Cir. 1981)(holding that decisions of the former Fifth Circuit handed down prior to the close of

existence of this factor; therefore, it does not weigh in favor in determining there exists personal jurisdiction over SWC.

Even if Plaintiff had met its burden of demonstrating—through the use of evidence—that SWC had telephoned 25 times regarding payroll, telephone communications themselves are not *per se* evidence of purposeful availment. *See e.g. Aeropower, Ltd. V. Matherly*, 511 F.Supp.2d 1139, 1156 (M.D. Ala. 2007)(finding that "telephone, fax, mail and wire communications" between the non-resident defendant and the forum plaintiff did not satisfy the requirements for personal jurisdiction); *Steel Processors, Inc. v. Sue's Pumps, Inc. Rentals*, 622 So.2d 910, 913 (Ala. 1993)("The use of interstate facilities (telephone, the mail) [is a] secondary or ancillary factor and cannot *alone* provide the 'minimum contacts' required by due process.")(emphasis in original)(internal citations omitted).  Moreover, the content of these particular telephone calls does not weigh in favor of finding personal jurisdiction. This court has not found, and Plaintiff has not provided, any binding authority holding 25 telephone calls by a party for whom personnel services are being performed to the provider of the service—for the sole purpose of transmitting information required for performance of the provider's contractual duties (for example, the amount of hours a particular employee worked during a relevant payroll

---

business on September 30, 1981, are binding in the Eleventh Circuit).

period)—amounts to purposeful availment.

The present case is distinguishable from Eleventh Circuit cases holding communications by the non-resident to the resident sufficient to establish personal jurisdiction. *See*, *e.g.*, *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007)(in a case involving contracts for the sale of goods, finding minimum contacts and purposeful availment, in part, based on several hundred telephone, email, facsimile, and ordinary mail correspondences for the purpose of discussing contracts and ordering goods);[10] *Diamond Crystal Brands, Inc. v. Food Movers, Intern., Inc.*, 593 F.3d 1249 (11th Cir. 2010)(in case involving contracts for the sale of goods, finding minimum contacts and purposeful availment and the existence of an "ongoing and substantial relationship" where non-resident defendant initiated 14 transactions in 6 months by sending to the resident plaintiff unsolicited purchase orders for goods). Based on the facts and argument as presented, Defendants' 25 telephone communications were not, as in *Sloss*, for the purposes of discussing contract terms or negotiations. They were also not for the purpose of creating new transactions, as in *Sloss* and *Diamond Crystal*, wherein the defendants placed new purchase orders. There is no evidence, for example, that SWC's purpose in these conversations was

---

[10]  In addition to the hundreds of communications placing purchase orders and discussing contract terms, there were other factors which resulted in a finding that personal jurisdiction was warranted, including the fact that defendant initiated the contract and that defendant's representative visited the plant to assure the initial run of custom products was satisfactory.

to, without solicitation, create new obligations for Plaintiff or to expand on the previously agreed-upon contract. Especially when combined with no other evidence that would substantiate a finding that SWC purposefully availed itself of Alabama's laws and protections such that there existed minimum contacts with Alabama, the communications do not rise to such a level that would warrant a determination that personal jurisdiction exists.

Finally, Plaintiff argues that because "Defendants made payments to Plaintiff in Alabama," that personal jurisdiction exists. Plaintiff, again, offers no evidence to support this assertion of fact. Even if Plaintiff had offered evidence, this argument is again combined with no supporting authority, and is not persuasive. As the court stated in *Norment*, such contact is "not to be ignored," but "not enough to tip the scale in [Plaintiff's] favor on the question of purposeful availment." *Norment* at *11.[11]

Having, on the record as presented to the court by the parties, balanced the factors for and against a finding of purposeful availment, this court is not persuaded that SWC is subject to personal jurisdiction in Alabama. Considering the quality, nature and extent of its contacts with Alabama, SWC's limited contacts with Alabama "cannot support a finding of purposeful activity invoking the benefits and protections

---

[11] Indeed, if payment pursuant to a contract alone were enough to create purposeful availment, it is difficult to reconcile the general principle that the existence of a contract (which necessarily requires payment) is insufficient to create personal jurisdiction.

of Alabama under the contracts oriented test." *Norment* at *11. The nature and quality of the SWC's purposeful contacts with Alabama and the context therefor create, at best, only "an attenuated affiliation with the forum." *Norment* at *11. (citing *Burger King*, 471 U.S. at 476 n.18)(internal citations omitted).

In light of their being no evidence to support purposeful availment on the part of SWC, SWC's contacts are not such that it could reasonably anticipate being haled into court in Alabama. *See Fraser*, 594 F.3d at 850 (11th Cir.2010). Because SWC does not have the requisite minimum contacts to support personal jurisdiction, it is not necessary to reach the fairness tier of the due process inquiry. *See e.g. Norment* at *11; *Diamond Crystal Brands*, 593 F.3d at 1267 (11th Cir. 2010).

The motion to dismiss SWC for lack of personal jurisdiction is due to be granted, and, for the same reason, it is due to be granted as to Dr. Doniparthi.[12]

## IV.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendants' motion to dismiss both Defendants for lack of personal jurisdiction (Doc. 7) be **GRANTED**. It is the **RECOMMENDATION** of the Magistrate Judge that the Defendants' motion to dismiss the claims against Dr. Doniparthi for failure to state claim and alternative motion to transfer venue to the

---

[12]  The evidence establishes he signed the Agreement in his capacity as President of SWC.

Northern District of Georgia (Doc. 7) are **MOOT** in light of the recommended disposition of Defendants' motion to dismiss.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **August 14, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 31st day of July, 2015.

/s/ Paul W. Greene
United States Magistrate Judge